UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 3:24-CR- 158 |
| v. : | |
| : | (Judge Munley) |
| JAMES MAHON IV, and : | |
| JOEL GILLICK, : | |
| Defendants : | |

INDICTMENT

THE GRAND JURY CHARGES:

FILED
SCRANTON

JUN 25 2024

PER_____
DEPUTY CLERK

COUNT 1
18 U.S.C. § 1349
(Bank, Wire, and Mail Fraud Conspiracy)

I. Introduction

At times material to the Indictment:

1.  Defendant JAMES MAHON IV was a resident of Luzerne County, within the Middle District of Pennsylvania, and the Vice President of Tammac Holdings Corp. ("Tammac").

2.  Defendant JOEL GILLICK was a resident of Lackawanna County, within the Middle District of Pennsylvania, an attorney, and the Compliance Officer of Tammac.

1

3. Tammac was incorporated in the state of Delaware, and maintained its headquarters and principle places of business in Luzerne County, within the Middle District of Pennsylvania.

4. Tammac's business operations included originating loans to individuals who purchased manufactured homes located in various states throughout the United States. Tammac also bundled loans into portfolios that were sold to investors, including through private placement securitizations, and to financial institutions insured by the Federal Deposit Insurance Corporation ("FDIC").

5. After selling loan portfolios to financial institutions and investors, Tammac often entered servicing agreements with those financial institutions and investors. Pursuant to those servicing agreements, Tammac continued to service the loans in the portfolios, in exchange for collecting a servicing fee or, as with the securitizations, an interest stream known as the "interest only strip." In servicing the loans, Tammac's duties included receiving monthly payments from borrowers and remitting those payments to the appropriate financial institutions and investors, attempting to collect payments from

delinquent borrowers, and overseeing foreclosure and repossession processes and sales.

6. Certain servicing agreements entered between Tammac and the financial institutions and investors contained provisions known as "trigger events." The trigger event provisions afforded the financial institutions and investors with recourse against Tammac, upon occurrence of an antecedent condition. The conditions that activated the trigger events included exceeding delinquency thresholds and repossession loss thresholds in the loan portfolios. The financial institutions and investors could impose financial consequences on Tammac for hitting a trigger event, including requiring Tammac to repurchase delinquent loans, reducing, pausing or eliminating the servicing fees and interest only strip collected by Tammac, and replacing Tammac as the loan portfolio's servicing entity.

7. Financial Institution #1, Financial Institution #2, and Financial Institution #3 were financial institutions insured by the FDIC. Financial Institution #1, Financial Institution #2, and Financial Institution #3 purchased loan portfolios from Tammac, and entered

servicing agreements with Tammac that contained trigger event provisions.

8. Institutional Investor #1 purchased loan portfolios from Tammac through private placement securitizations. Institutional Investor #1 entered servicing agreements with Tammac that contained trigger event provisions.

9. Investment Firm #1 was a private equity investment firm headquartered in Philadelphia, Pennsylvania.

10. Between in or about March 2017 and August 2020, Investment Firm #1 purchased Tammac in two stock purchase agreements, following a due diligence process. Investment Firm #1 also purchased, including through an affiliated entity, loan portfolios from Tammac.

11. Investment Firm #2 was an investment bank headquartered in Philadelphia, Pennsylvania. Investment Firm #2 served as a broker during the purchase of Tammac by Investment Firm #1, and the purchase of Tammac loan portfolios by Investment Firm #1 and its affiliated entity.

II. Objects of the Conspiracy

12. The objects of the conspiracy were for defendants JAMES MAHON IV, JOEL GILLICK, and their coconspirators to cause Tammac to retain servicing fees and interest only strip income, retain their personal employments and compensation, and cause Investment Firm #1 to purchase Tammac and Tammac loan portfolios, by fraudulently suppressing delinquency rates and repossession losses in loan portfolios, and by misrepresenting Tammac's financial information to, and concealing delinquency and repossession information from, financial institutions, including Financial Institution #1, Financial Institution #2, and Financial Institution #3; investors, including Institutional Investor #1; auditors; and Investment Firm #1.

III. Statutory Allegations

13. From in or about 2008, the exact date being unknown to the Grand Jury, and continuing thereafter until in or about September 2021, in the Middle District of Pennsylvania, and elsewhere, the defendants,

JAMES MAHON IV and
JOEL GILLICK,

knowingly and willfully conspired, combined, confederated, and agreed together, and with other persons both known and unknown to the Grand Jury, to:

   a. knowingly execute a scheme and artifice to defraud and to obtain the moneys, funds, credits, assets, and other property owned by and under the custody and control of financial institutions whose deposits were insured by the FDIC, by means of material false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344;

   b. with the intent to defraud, knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing, advancing, furthering, and carrying out the scheme and artifice to defraud, knowingly transmitted and caused others to transmit by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343; and

   c. with the intent to defraud, knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing, advancing, furthering, and carrying out the scheme and artifice to defraud, knowingly delivered and caused others to deliver by mail and a private and commercial interstate carrier, according to the direction thereon and at the place at which it was directed to be

delivered by the person to whom it was addressed, any matter or thing, in violation of Title 18, United States Code, Section 1341.

## IV. Manner and Means

The objects of the conspiracy were accomplished, in part, by the following manner and means:

14. The coconspirators agreed to prevent activating Tammac's recourse obligations under the trigger event provisions of servicing contracts, including those with Financial Institution #1, Financial Institution #2, Financial Institution #3, and Institutional Investor #1, by artificially and fraudulently suppressing, and causing others to suppress, delinquency rates and repossession losses in serviced loan portfolios.

15. The coconspirators made payments on delinquent loans, supplemented repossession losses, and caused others to make payments on delinquent loans and supplement repossession losses, using monies that derived from Tammac's own company funds, fees, and income, the proceeds of repossession sales, and other borrowers' loan payments. These payments on delinquent loans, and to supplement repossession

losses, were referred to as "fake payments," "non-cash payments," and "Y payments."

16. The coconspirators, through use of the United States mail and private and commercial carriers, obtained, and caused others to obtain, money orders in the names of delinquent borrowers, but using Tammac company funds, to make fake payments on those delinquent loans and conceal the true nature of those fake payments.

17. The coconspirators concealed and caused others to conceal the fake payments in Tammac's books, records, and computer systems.

18. The coconspirators provided and caused others to provide, via the internet, interstate wires, and United States mail and private and commercial carriers, monthly reports to financial institutions, including Financial Institution #1, Financial Institution #2, and Financial Institution #3, and investors, including Institutional Investor #1, who owned Tammac loan portfolios, containing false and inaccurate information, including about delinquency rates, repossession losses, and repossession sales.

19. The coconspirators provided and caused others to provide, financial statements and reports containing false and inaccurate information, to third party auditors and financial institution auditors, including from Financial Institution #1. The coconspirators also concealed and misrepresented, and caused others to conceal and misrepresent, the true nature of fake payments, from and to third party auditors and financial institution auditors, including from Financial Institution #1.

20. The coconspirators provided and caused others to provide, via the internet and interstate wires, false and inaccurate information about Tammac, to Investment Firm #1 during the course of due diligence, including through Investment Firm #2. That false and inaccurate information included false and inaccurate financial statements and reports, and false and inaccurate projected earnings for Tammac.

21. The coconspirators concealed and misrepresented, and caused others to conceal and misrepresent, the true nature of fake

payments, from and to Investment Firm #1 during the course of due diligence, including through Investment Firm #2.

22. The conspirators, through the use of fraudulent misrepresentations, caused Investment Firm #1 to purchase Tammac, via interstate wire transfers.

23. Following the purchase of Tammac by Investment Firm #1, the conspirators, through the use of fraudulent misrepresentations, including through Investment Firm #2, caused Investment Firm #1 to purchase Tammac loans, via interstate wire transfers.

24. Following the purchase of Tammac by Investment Firm #1, the conspirators continued to make, and cause others to make, fake payments on delinquent loans and to supplement repossession losses. The conspirators also continued to conceal, and cause others to conceal, the true nature of those fake payments from Investment Firm #1. The conspirators further continued to provide Investment Firm #1 with false and inaccurate information about loan portfolio delinquency rates, repossession losses, and repossessions sold.

25. Throughout the time period of the scheme, the coconspirators caused Tammac to collect servicing fees and interest only strip income, to which it was not entitled, and to avoid repurchasing delinquent loans, from financial institutions and investors, including Financial Institution #1, Financial Institution #2, Financial Institution #3, and Institutional Investor #1.

All in violation of Title 18, United States Code, Section 1349.

THE GRAND JURY FURTHER CHARGES:

## COUNTS 2 THROUGH 5
18 U.S.C. § 1344
(Bank Fraud)

26. The factual allegations of paragraphs 1 through 12, and 14 through 25, are incorporated here.

27. From in or about 2008, the exact date being unknown to the Grand Jury, and continuing thereafter until in or about September 2021, in the Middle District of Pennsylvania, and elsewhere, the defendants,

**JAMES MAHON IV and
JOEL GILLICK,**

aiding and abetting others, and aided and abetted by others, knowingly executed a scheme and artifice to defraud and to obtain the moneys, funds, credits, assets and other property owned by and under the custody and control of Financial Institution #1, Financial Institution #2, and Financial Institution #3, each a financial institution whose deposits were insured by the FDIC, by means of material false and fraudulent pretenses, representations and promises.

## The Executions of the Scheme

28. For the purpose of executing and attempting to execute the scheme and artifice to defraud, defendants JAMES MAHON IV and JOEL GILLICK, aiding and abetting others, and aided and abetted by others, submitted and caused others to submit to Financial Institution #1, Financial Institution #2, and Financial Institution #3, the following documents, with each submission being a separate count:

| Count | Date | Description |
| --- | --- | --- |
| 2 | October 6, 2014 | Email from JOEL GILLICK to Financial Institution #1 personnel, attaching monthly reports containing false and inaccurate information |
| 3 | July 19, 2019 | Email from JAMES MAHON IV to Financial Institution #2 personnel, attaching false and inaccurate delinquency and repossession information |
| 4 | December 1, 2020 | Email from Tammac Employee #1 to Financial Institution #3 personnel, attaching monthly reports containing false and inaccurate information |
| 5 | January 5, 2021 | Email from Tammac Employee #1 to Financial Institution #2, attaching monthly reports containing false and inaccurate information |

Each in violation of Title 18, United States Code, Sections 1344 and 2.

THE GRAND JURY FURTHER CHARGES:

## COUNTS 6 AND 7
18 U.S.C. § 1343
(Wire Fraud)

29. The factual allegations of paragraphs 1 through 12, and 14 through 25, are incorporated here.

30. From in or about 2008, the exact date being unknown to the Grand Jury, and continuing thereafter until in or about September 2021, in the Middle District of Pennsylvania, and elsewhere, the defendants,

### JAMES MAHON IV and
### JOEL GILLICK,

aiding and abetting others and aided and abetted by others, with the intent to defraud, knowingly devised and intended to devise the above-described scheme and artifice to defraud, and to obtain money and property, and attempted to do so, by means of materially false and fraudulent pretenses, representations, and promises.

31. For the purpose of executing, advancing, furthering, and carrying out the above-described scheme and artifice to defraud,

defendants JAMES MAHON IV and JOEL GILLICK knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds, with each being a separate count:

| Count | Approximate Date of Wire | Description |
|---|---|---|
| 6 | October 1, 2020 | Email from Tammac Employee #1 to Institutional Investor #1 personnel, attaching monthly reports containing false and inaccurate information |
| 7 | April 20, 2021 | Email from Jeffrey Poth at Tammac, to Investment Firm #2 personnel, containing false and inaccurate information |

Each in violation of Title 18, United States Code, Sections 1343 and 2.

A TRUE BILL

Date: June 25, 2024

GERARD M. KARAM
United States Attorney

By: _____

PHILLIP J. CARABALLO
CARLO D. MARCHIOLI
Assistant United States Attorneys

15