UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR. NO. 3:24-CR-158-02 |
| | : | |
| v. | : | (Judge Munley) |
| | : | |
| JOEL GILLICK, | : | |
| Defendant. | : | Electronically Filed |

GOVERNMENT'S SENTENCING MEMORANDUM

## I. GOVERNMENT'S SENTENCING RECOMMENDATION AND POSITION WITH RESPECT TO THE PRESENTENCE REPORT

On January 24, 2025, pursuant to a plea agreement, Joel Gillick pleaded guilty to Count 1 of the Indictment which charged him with a violation of 18 U.S.C. 1349, conspiracy to commit bank and wire fraud. Count 1 carries a statutory maximum sentence of 30 years, a fine of 1,000,000, a term of supervised release of 5 years, and a special assessment of $100. The government has reviewed the Probation Officer's Presentence Investigation Report ("PSR") and submits that the Probation Officer has correctly scored the defendant's offense level, criminal history category and guideline range. Under the PSR's calculation, Gillick's guideline range—based on a total offense level of 24 and a criminal history category of I—is 51 to 63. PSR ¶60. Gillick's sentencing is scheduled for Wednesday, September 23, 2026. For the

reasons below, the Government respectfully submits that a guideline sentence of 51 months is sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

## II. FACTUAL BACKGROUND

An extensive account of the offense was presented during the trial of codefendant James Mahon. Additionally, Gillick's change of plea hearing and the PSR provide a detailed account of the offense and Gillick's role in the offense. Therefore, in the following paragraphs, the government focuses on the facts relevant to the §35539(a) sentencing factors.

Between 2008 and 2021, Gillick and coconspirators, including James Mahon and Jeffrey Poth, agreed to take steps to prevent activating the trigger event provisions of servicing contracts, including in the servicing contracts with Customers Bank, Firstrust Bank, Luzerne Bank, and Babson by artificially and fraudulently suppressing, and causing others to suppress, delinquency rates and repossession losses in serviced loan portfolios. *See* Change of Plea Hr'g Tr. 27:23 – 28:5, Jan. 24, 2025.

The coconspirators made payments on delinquent loans, supplemented repossession losses, and caused others to make payments on delinquent loans and supplement repossession losses, using Tammac's own company funds, fees, and income, the proceeds of repossession sales, and borrowers' loan payments.

The payments applied to delinquent loans, and to supplement repossession losses, were referred to as "fake payments," "non-cash payments," and "Y payments." *See Id.*

Gillick and coconspirators, including James Mahon and Jeffrey Poth, through use of the United States mail and private and commercial carriers, obtained, and caused others to obtain, money orders in the names of delinquent borrowers using Tammac company funds, to make the fake payments on delinquent loans and conceal the true nature of the fake payments. *See Id.*

Gillick and coconspirators, including James Mahon and Jeffrey Poth concealed and caused others to conceal the fake payments in Tammac's books, records, and computer systems. *See Id.*

The coconspirators provided and caused others to provide, via the internet, interstate wires, and United States mail and private and commercial carriers, monthly reports to financial institutions and investors who owned Tammac loan portfolios. *See Id.*

The coconspirators knew that these monthly reports to financial institutions and investors contained false and inaccurate information, including information about delinquency rates, repossession losses, and repossession sales. *See Id.*

Additionally, Gillick and coconspirators, including James Mahon and Jeffrey Poth provided and caused others to provide financial statements and reports the coconspirators knew contained false and inaccurate information, to third party auditors and financial institution auditors. *See Id.*

Gillick and coconspirators, including James Mahon and Jeffrey Poth also concealed and misrepresented, and caused others to conceal and misrepresent, the true nature of fake payments, from third party auditors and financial institution auditors. *See Id.*

Between 2017 and 2020, private equity investment firm LL Funds LLC purchased Tammac in two stock purchase agreements for approximately $12 million. *See Id.*

Those purchases were preceded by a due diligence process facilitated by investment bank REVL Capital Groups. Also, following the purchase, LL Funds purchased loan portfolios from Tammac. *See Id.*

During the due diligence process, Gillick and coconspirators, including James Mahon and Jeffrey Poth, provided and caused others to provide, via the internet and interstate wires, false and inaccurate financial information about Tammac to LL Funds and REVL. *See Id.*

That false and inaccurate information included false and inaccurate financial statements and reports, and false and inaccurate projected earnings for Tammac. *See Id.*

The coconspirators concealed and misrepresented, and caused others to conceal and misrepresent, the true nature of fake payments from LL Funds causing LL Funds to purchase via interstate wire transfers, Tammac and Tammac loan portfolios, through the use of fraudulent misrepresentations. *See Id.*

Following the purchase of Tammac by LL Funds, the conspirators continued to make, and cause others to make, fake payments on delinquent loans and to supplement repossession losses. *See Id.*

Gillick and coconspirators, including James Mahon and Jeffrey Poth also continued to conceal, and cause others to conceal, the true nature of those fake payments from LL Funds. The conspirators further continued to provide LL Funds with false and inaccurate information about loan portfolio delinquency rates, repossession losses, and repossessions sold. *See Id.*

Throughout the period of the scheme, Gillick and coconspirators, including James Mahon and Jeffrey Poth caused Tammac to collect servicing fees and "interest only strip income" to which it was not entitled, and to avoid repurchasing delinquent loans, from financial institutions and investors. *See Id.*

## III. TITLE 18 U.S.C. 3553(a) FACTORS

According to USSG §1B1.1(b), after determining the kinds of sentence and the guideline range, the Court must consider other applicable factors in 18 U.S.C. 3553(a) to determine a sentence that is

sufficient, but not greater than necessary, to comply with the purposes of sentencing. These factors include the following:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed—
>
> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > **(B)** to afford adequate deterrence to criminal conduct;
> >
> > **(C)** to protect the public from further crimes of the defendant; and
> >
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
>
> **(4)** . . . the sentencing range established [by the Guidelines] . . . --
>
> . . .
>
> **(5)** any pertinent policy statement—
>
> > **(A)** issued by the Sentencing Commission . . .
> >
> > **(B)** that . . . is in effect on the date the defendant is sentenced.

> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> **(7)** the need to provide restitution to any victims of the offense

18 U.S.C.A. § 3553a(1) – (7) (footnote omitted).

Although a district court need not address each of these factors at length, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision[-]making authority." *Rita v. U.S.*, 551 U.S. 338, 356 (2007); *see Gall v. United States*, 128 S. Ct. 586, 597 (2007) (explaining that sentencing court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing").

### A. The Nature and Circumstances of the Offense

The Sentencing Commission provides that ordinarily the sentences of defendants convicted of a federal offense should reflect the nature and magnitude of the loss caused or intended by their crimes." USSG §2B1.1, comment. (backg'd.). The Commentary to USSG §2B1.1 further explains that "along with other relevant sentencing factors

under the guidelines, loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under §2B1.1." Id.

Gillick pleaded guilty to conspiring with former Tammac president Jeffrey Poth, former Tammac vice-president James Mahon, and other unindicted coconspirators to execute a complex accounting fraud scheme that spanned more than 15 years and resulted in an agreed upon actual loss of more than $9,500,000 but less than $25,000,000.

The most compelling factors related to the nature and circumstances of the offense are the magnitude of a loss of more than $9,500,000; the duration of the conspiracy - more than 15 years; the complexity of the scheme including the fact the scheme involved personnel from Tammac's Accounting Department, Collections Department, IT Department, and Repossession Departments; and the fact that in executing the scheme Poth, Mahon, and Gillick used their positions as Tammac's three highest ranked executives to compel lower level employees to participate in the scheme.

**B. Defendant's History and Characteristics**

The United States does not dispute the account of Gillick's history and characteristics that the probation officer has detailed in the PSR. PSR ¶¶41 – 58.

**C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment**

The Court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). These factors are related. For the reasons discussed above, the government's recommended sentence of 51 months is a just punishment that reflects Gillick's role in the offense, reflects the seriousness of the offense, and promotes respect for the law.

**D. Adequate Deterrence**

The Court also must consider the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a)(2)(B), (C). Adequate deterrence includes both general and specific deterrence. With respect to the former, a guideline sentence of 51 months is

necessary to send the message that individuals like Gillick will be punished for engaging in large scale fraud. With respect to the latter, the United States submits that a sentence is not necessary to protect the public from Gillick, as his risk of recidivism is low.

**E. Restitution**

The United States submits that restitution is appropriate and at sentencing the United States will make a recommendation based on complex issues of fact that would complicate and prolong the sentencing process to a degree that the need to provide restitution to the victim is outweighed by the burden on the sentencing process.

**F. Conclusion**

For the foregoing reasons, the United States recommends a sentence of 51 months, no fine, and restitution.

Respectfully submitted,

BRIAN D. MILLER
United States Attorney

Dated: September 16, 2026

/s/ Joseph J. Terz
JOSEPH J. TERZ
Assistant U.S. Attorney
PA 55480
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
joseph.terz@usdoj.gov

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CR. NO. 3:24-CR-158-02** |
| | : | |
| **v.** | : | **(Judge Munley)** |
| | : | |
| **JOEL GILLICK,** | : | |
| **Defendant.** | : | **Electronically Filed** |

**CERTIFICATE OF SERVICE**

I certify that on September 16, 2026, I served the foregoing Sentencing Memorandum on counsel for the Defendant by electronic case filing, addressed as follows:

Joseph R. D'Andrea, Esquire – joe@joedandrea.com

/s/ Samantha Deibert
SAMANTHA DEIBERT
Legal Administrative Specialist